**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GEORGE A. FLASHER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-109 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., Chief Judge.

### I.       INTRODUCTION

George A. Flasher, Jr. ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* and § 1381 *et seq*. Plaintiff filed his applications on May 4, 2009, alleging disability since December 20, 2008 due to a partial right leg amputation since birth, a torn muscle in his back and bipolar disorder (AR 107-115; 126).[1] His applications were denied (AR 57-66), and following a hearing held on August 31, 2010 (AR 21-46), the administrative law judge ("ALJ") issued his decision denying benefits to Plaintiff on October 13, 2010 (AR 9-17). Plaintiff's request for review by the Appeals Council was denied (AR 1-3), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). He filed his complaint challenging the ALJ's decision, and presently pending before the Court are the parties' cross-motions for summary judgment. For the following reasons, Plaintiff's motion will be denied and the Commissioner's motion will be granted.

---

[1] References to the administrative record [ECF No. 6], will be designated by the citation "(AR ___)".

1

## II.     BACKGROUND

Plaintiff was 35 years old on the date of the ALJ's decision (AR 16). He did not finish high school but earned a General Educational Development ("GED") diploma (AR 130). He has past relevant work experience as a construction worker from 1997 to 2007, and as a warehouse stocker from October 2008 to December 2008 (AR 127). Plaintiff reported that he stopped working in December 2008 because he was fired (AR 127).

On June 21, 2009, Plaintiff sought treatment in the emergency room for complaints of back and right flank pain which radiated to his lower right quadrant (AR 178). Plaintiff exhibited abdominal tenderness on physical examination, and his remaining physical was unremarkable (AR 180-181). A CT scan of his abdomen was negative (AR 178). He was treated with medication and discharged in stable condition (AR 181).

On June 26, 2009, Plaintiff began treatment with Raymond McAllister, M.D., for right-sided neck pain and increased dizziness after landing on his head while doing a flip on a trampoline (AR 200-202). Plaintiff reported suffering from neck problems for several years (AR 200). On physical examination, Dr. McAllister found that Plaintiff had decreased neck rotation and bilateral tenderness and spasm of his paracervical muscles (AR 201). His remaining physical was unremarkable (AR 201). A CT scan of Plaintiff's cervical spine showed minimal anterior subluxation at C4 in relation to C5, and was otherwise unremarkable (AR 203). Dr. McAllister prescribed pain medication and a muscle relaxer, and prescribed a new prosthesis for his right leg (AR 201).

On July 14, 2009, Plaintiff underwent a consultative examination performed by John Kalata, D.O. (AR 209-219). Dr. Kalata reported that Plaintiff had an abnormal station and a "limping type gait" due to his prosthesis (AR 209). Plaintiff complained of discomfort from his prosthesis, muscle cramps in his left leg, and back pain from previous heavy construction work (AR 209). He indicated that he had also been diagnosed with bipolar disorder (210). Plaintiff stated that he had been advised to have surgical revision of his stump but was "afraid" to have it done (AR 210). Plaintiff's physical examination was essentially unremarkable, with no musculoskeletal strains or sprains, and he had a full neck range of motion (AR 211-212). His

2

reflexes were 2/4 in his left leg, he had full motor power at 5/5 in the upper extremities, and his mental state appeared to be stable (AR 212-213). Dr. Kalata found Plaintiff could not walk on his toes or heels or squat well (AR 213). He further found that Plaintiff had no motor power in his right leg (AR 213). Dr. Kalata diagnosed the Plaintiff with, *inter alia*, status congenital loss of right leg; chronic stump pain; ambulatory dysfunction; unstable low back pain; bipolar disorder; and status post right knee arthroscopy (AR 213).

Dr. Kalata assessed Plaintiff's ability to perform work-related physical activities, opining that, due to his right leg prosthesis, Plaintiff could only occasionally lift and carry two to three pounds, stand for one hour or less, and was unlimited in his ability to sit (AR 215). Dr. Kalata further opined that Plaintiff was limited in his pushing and pulling abilities with his lower extremities, and could never perform postural activities other than occasional bending, balancing and climbing (AR 215-216).

On August 4, 2009, Arlene Rattan, Ph.D., a state agency reviewing psychologist, reviewed the psychiatric evidence of record and determined that Plaintiff had no limitations in completing activities of daily living or social functioning, and only mild difficulties in maintaining concentration, persistence and pace (AR 230). She noted that Plaintiff had only one mental health hospitalization at age 14, was not currently taking medication or undergoing mental health therapy, and was not limited with respect to his daily activities (AR 232). She further noted that Dr. Kalata reported Plaintiff was mentally stable (AR 232). Dr. Rattan concluded that Plaintiff's mental impairment was not severe (AR 220).

On August 4, 2009, Martha McMichael, a state agency examiner, reviewed the medical evidence of record and concluded that Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk for a total of two hours in an 8-hour workday, sit for about six hours in an 8-hour workday, and was limited in pushing and pulling activities in his lower extremities (AR 48). She further found Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl, but should avoid concentrated exposure to vibrations and hazards such as machinery and heights (AR 49-50). In support of her conclusion, she relied, in part, on Plaintiff's cervical spine x-rays, Dr. McAllister's treatment note dated June 26, 2009,

3

and Dr. Kalata's physical examination findings dated July 14, 2009 (AR 52-53). Ms. McMichael was of the view that Dr. Kalata's assessment was inconsistent with the record and that he relied heavily on the Plaintiff's subjective complaints in determining his limitations (AR 53).

On August 27, 2009, Plaintiff returned to Dr. McAllister and complained of right leg pain where his prosthesis connected to his stump (AR 242). Physical examination revealed a large mass at the end of his stump (AR 243). Dr. McAllister referred Plaintiff to a surgeon for possible removal of the mass and recommended that he contact a prosthetist for a new device for better comfort (AR 243).

On September 8, 2009, Plaintiff was evaluated for his stump discomfort by Ajaipal Kang, M.D. (AR 279). Plaintiff reported increased discomfort following a recent change in his prosthetic device (AR 279). Dr. Kang noted there was some excess soft tissue at the base, and recommended that he be evaluated by an orthopedic surgeon (AR 279).

On September 16, 2009, Dr. McAllister completed an Employability Assessment Form for the Department of Public Welfare ("DPW"), and checked a box stating that Plaintiff was "permanently disabled" due primarily to bipolar disorder and secondarily due to "back pain, no right leg" (AR 267). On this form, Dr. McAllister checked that his assessment was based upon physical examination, review of medical records, and appropriate tests and diagnostic procedures (AR 267).

Plaintiff returned to Dr. McAllister on October 21, 2009 and reported difficulty sleeping due to neck and back pain (AR 244). He also reported an increase in his bipolar symptoms (AR 244). Plaintiff stated that he had not taken medication because it led to weight gain, which was difficult for his prosthesis (AR 244). On physical examination, Dr. McAllister reported that Plaintiff's neck showed no decrease in suppleness (AR 245). He further reported that his musculoskeletal and neurological examinations were normal (AR 245). Plaintiff was diagnosed with, *inter alia*, cervicalgia and depression, but was "medically stable" (AR 246). He was prescribed an antidepressant and a muscle relaxer for his muscle aches (AR 246).

Plaintiff received a new prosthesis in November 2009 and it was noted that he was "very happy" with "good" ambulation and comfort (AR 237).

4

On January 6, 2010, Plaintiff continued to complain of sleep difficulties due to neck pain (AR 247). He reported that his antidepressant medication was working well and his mood was "much better" (AR 247). On physical examination, Dr. McAllister reported that Plaintiff had significant bilateral shoulder spasm, but no spinal process tenderness (AR 248). He found Plaintiff's mood and affect were normal, and that his depression was "much improved" (AR 248). Dr. McAllister increased Plaintiff's medication dosage for his neck pain and added medication to help with pain and sleep (AR 248).

An MRI of Plaintiff's cervical spine conducted on January 18, 2010 showed a left paracentral disc herniation at focal C6-7 with moderately severe canal and cord impingement (AR 278). William Diefenbach, M.D., concluded there was no evidence of nerve root or spinal cord compression (AR 251). Dr. Diefenbach saw no need for surgical intervention and opined that Plaintiff would do well with a course of physical therapy (AR 251).

On January 26, 2010, Dr. McAllister reported that Plaintiff had a three week history of neck pain with no radicular symptoms after working on a trampoline with children (AR 249). Physical examination showed intact motor reflexes and sensory examination, with no evidence for C7 radiculopathy on the left side (AR 250). Dr. McAllister continued Plaintiff on his medication regimen and prescribed physical therapy (AR 250).

On April 7, 2010, Plaintiff was seen by Dr. McAllister and reported that he was "fine" but expressed concern over his weight gain since starting Effexor (AR 252). Dr. McAllister reported that Plaintiff's mood and affect were normal, and changed his medication to Cymbalta (AR 253). His physical examination was unremarkable, and Dr. McAllister reported that Plaintiff was otherwise medically stable (AR 253).

Plaintiff returned to Dr. McAllister on May 19, 2010 and complained of left knee pain and swelling after walking out of his shed (AR 254). Plaintiff reported no sleep difficulties or paresthesias (AR 254). On physical examination, Dr. McAllister found significant swelling of the suprapatellar bursa with tenderness (AR 255). He found no evidence of ligament instability or meniscal tear (AR 255). He assessed Plaintiff with suspected bursitis, prescribed prednisone and ordered x-rays (AR 255).

On June 23, 2010, Plaintiff reported that his knee pain had improved after taking prednisone, but he complained of a stabbing sensation from the medial to the patella (AR 256). Physical examination revealed tenderness along the medial joint line with a positive McMurray test, but no evidence of ligament instability (AR 257). Plaintiff's left knee x-rays showed a "very small" suprapatellar effusion and minimal degenerative changes (AR 257-258). Dr. McAllister referred Plaintiff for an orthopedic consult due to concerns about a meniscal tear (AR 258). With regard to his depression, Plaintiff reported that his weight had stabilized and his mood was "ok" (AR 256). Dr. McAllister found that Plaintiff had a flat affect with a depressed mood, and switched his medication to Effexor (AR 257-258).

On July 27, 2010, Plaintiff reported that his mood was stable on Effexor (AR 259). He denied any suicidal or homicidal thoughts or new symptoms (AR 259). Dr. McAllister continued him on Effexor since it appeared effective in improving his mood (AR 261).

Plaintiff and Frances Kinley, a vocational expert, testified at the hearing held by the ALJ on August 31, 2010 (AR 21-46). Plaintiff testified that he stopped working in 2008 because of an inability to walk for the length of time required in his job (AR 26). Plaintiff testified that he was a right leg amputee, and suffered from neck, back, knee and leg pain (AR 27). Plaintiff indicated that he received a new prosthesis earlier in the year, but had not worn it because it no longer fit (AR 29-30; 33). Plaintiff stated that he lived with his girlfriend and spent his days lying on the couch watching television or playing video games (AR 32). His girlfriend performed all the household chores (AR 32-33). His hobbies included drawing and playing the Xbox (AR 33). Plaintiff further testified that he was on medication for bipolar disorder but was not undergoing mental health treatment (AR 34). Plaintiff stated that neck and back pain prevented him from standing or sitting for extended periods of time (AR 42-43). He testified that he could stand for one hour, walk for one-half hour, sit for about 20 minutes, and was unable to lift more than 10 pounds (AR 43-44).

Lynette Rater, Plaintiff's girlfriend, testified that Plaintiff spent most of his time on the couch watching television and playing video games (AR 35). He occasionally did laundry, but performed no other household chores (AR 35-36). Plaintiff only socialized with family (AR 36).

The vocational expert was asked to assume an individual of the same age, education and work experience as Plaintiff, who was able to perform light work that involved standing or walking for two hours, and only occasional balancing, stooping, crouching, and climbing of stairs and ramps (AR 40). The hypothetical individual was precluded from crawling, kneeling, operating foot controls with the right lower extremity, and could have no exposure to hazards such as unprotected heights, moving machinery, and commercial driving (AR 40). The individual was further limited to simple, routine, repetitive tasks not performed in a fast-paced environment, requiring only simple, work-related decisions, and no workplace changes (AR 41). The vocational expert testified that such an individual could perform the light jobs of an office helper/clerical, information clerk, and gate guard, which could be performed with a sit/stand option (AR 40-41). The vocational expert indicated that the identified jobs were designated as light jobs due to the carrying and lifting requirements, but could be performed seated (AR 41). The vocational expert further testified that the hypothetical individual could perform the sedentary jobs of a telephone clerk, ticket checker, and a food and beverage order clerk (AR 41-42).

Following the hearing, the ALJ issued a written decision finding that the Plaintiff was not entitled to a period of disability, DIB or SSI within the meaning of the Act (AR 9-17). His request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 1-3). He subsequently filed this action.

### III. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 1097, 229 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and*

*Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV.   DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) with 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that the Plaintiff met the disability insured status requirements of the Act through March 31, 2012 (AR 9). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition. 20 C.F.R. §§ 404.1520; 416.920. The ALJ must determine: (1)

8

whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).  If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

      The ALJ concluded that Plaintiff's right leg amputation, back disorder and mood disorder were severe impairments, but determined at step three that he did not meet a listing (AR 11-13). The ALJ described the Plaintiff's residual functional capacity as follows:

> …[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to standing and/or walking for two hours in an eight-hour workday.  He can occasionally climb ramps and stairs but not ladders, ropes, or scaffolds.  He can occasionally balance, crouch, and stoop.  He must avoid crawling or kneeling.  He requires a sit-stand option at will.  He must avoid operation of foot controls.  He should avoid hazards such as moving machinery, unprotected heights, and commercial driving.  He is able to maintain attention and concentration for periods commensurate with simple, routine, repetitive tasks.  He should avoid a fast-pace production environment.  He is limited to only simple work-related decisions and relatively few to no workplace changes.

(AR 13).  At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 16).  Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

9

Plaintiff's challenges relate to the ALJ's evaluation of the opinion evidence in assessing his residual functional capacity ("RFC").[2] Following a comprehensive discussion of the medical and non-medical evidence, the ALJ stated:

> …[T]he evidence shows the claimant has limitations in his ability to perform work-related activities, but that he remains able to perform work at [the] light level of exertion.  In reaching this conclusion the undersigned accords great weight to the State agency medical consultant's physical residual functional capacity assessment as it is consistent with the evidence of record as a whole in describing the claimant's limitations and ability to do work related activities.  The undersigned accords little weight to the assessments of Dr. Kalata and Dr. McAllister as being inconsistent with their own clinical findings as well as failing to correlate functionally with other clinical findings in the record.  The claimant's leg was amputated at birth; however, it has not precluded activities (e.g. shopping, watching television, playing video games, doing a trampoline flip, etc.) or performing medium to heavy SGA in the past, and recently he has been provided a new prosthesis (Exhibit 8F/2) to help overcome past discomfort.  The claimant has been given the benefit of [the] doubt and his combination of impairments have been taken into consideration in the reduced residual functional capacity issued.

(AR 15).

Plaintiff first argues that the ALJ erred in attributing great weight to the RFC assessment prepared by Ms. McMichael, the state agency examiner.  *See* [ECF No. 9] p. 10.  In concluding that the Plaintiff was capable of performing light work, the ALJ identified Ms. McMichael as a "[s]tate agency medical consultant" (AR 15).  The Commissioner has conceded that Ms. McMichael was a non-medical consultant, but argues that even absent her opinion, the ALJ's RFC assessment was supported by substantial evidence.  *See* [ECF No. 12] p. 17.  This Court addressed a similar argument in *Dominguez v. Astrue*, 2012 WL 3527078 (W.D.Pa. 2012):

> Plaintiff last challenges the ALJ's reliance on the opinion of Mr. Williamson, the state agency examiner, who reviewed the medical evidence of

---

[2] "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'"  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999); *see also* 20 C.F.R. §§ 404.1545(a); 416.945(a).  An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2).  In making this determination, the ALJ must consider all the evidence before him.  *Burnett*, 220 F.3d at 121.

>record and concluded that Plaintiff had no physical limitations (AR 291-296). Plaintiff contends that the ALJ erred in relying on Mr. Williamson's RFC assessment relative his physical impairments because Mr. Williamson was not a physician. The Commissioner argues that any error in this regard was harmless since the ultimate outcome would be unaffected on remand. We agree. In *Humphreys v. Barnhart*, 127 Fed. Appx. 73 (3d Cir. 2005), the claimant argued that it was reversible error for the ALJ to rely on the opinion of a state agency examiner who concluded that the claimant could perform light work. *Id*. at p. 75-76. The court found any reliance was harmless because it was not the sole basis for the ALJ's conclusion. *Id*. The ALJ also relied upon substantial objective medical evidence contradicting the treating physicians' opinions. *Id*. at p. 76. The court concluded that even absent a reference to the examiner's opinion, the overall record evidence supported the ALJ's decision to reject the opinions of the claimant's treating physicians that she was permanently disabled. *Id*.
>
>Similar to the ALJ in *Humphreys*, the ALJ in this case also relied on other substantial evidence in concluding that Plaintiff was not precluded from working. The ALJ pointed to the objective diagnostic studies, which revealed either no abnormalities or mild findings (AR 17). The ALJ further pointed to the minimal findings on physical examinations (AR 17). The ALJ further found the lack of significant, ongoing treatment was inconsistent with disabling limitations (AR 17). Finally, Plaintiff himself testified he could lift 50 pounds, which is in accord with the exertional requirements of medium work (AR 15; 34-35). Accordingly, any error in relying on Mr. Williamson's assessment was harmless. *See Stewart v. Astrue*, 2012 WL 1969318 at *6 (E.D.Pa. 2012) ("even if there were a concern that the ALJ labored under the mistaken belief that the Physical RFC form … had been authored by a physician, the error would be harmless in light of the remaining record evidence providing substantial evidence for a finding that Stewart was capable of performing work at the light exertional level.").

*Dominguez*, 2012 WL 3527078 at *13.

We reach the same result here, since the ALJ's decision reveals that he did not rely solely on Ms. McMichael's assessment in fashioning the Plaintiff's physical RFC. Rather, the ALJ discussed the objective diagnostic studies, findings on physical examination from the Plaintiff's treating and examining physicians, and the Plaintiff's own recitation of his activities, in concluding that he could perform a reduced range of light work. For example, with respect to Plaintiff's claimed limitations due to his neck and back pain, the ALJ observed that at his initial visit with Dr. McAllister in June 2009, he exhibited a decreased range of neck motion, but his

11

cervical spine x-rays revealed minimal anterior subluxation and were otherwise unremarkable (AR 14).  At his consultative examination with Dr. Kalata in July 2009, Plaintiff had no musculoskeletal strains or sprains, and he exhibited a full range of neck motion (AR 14).  Diagnostic studies in January 2010 revealed no evidence of nerve root or spinal cord compression (AR 14).  With respect to the Plaintiff's claimed limitations relating to his right leg amputation, the ALJ noted that it had been amputated at birth, and had not precluded him from participating in activities such as shopping, watching television, playing video games, doing a trampoline flip, etc. (AR 15).  The ALJ further observed that Plaintiff had been able to perform medium to heavy substantial gainful activity in the past, and had recently been provided a new prosthesis to help overcome past discomfort (AR 15).  All of these findings are supported by substantial and we find no error in this regard.

Plaintiff further challenges the ALJ's rejection of Dr. McAllister's opinion that he was permanently disabled.  *See* [ECF No. 9] p. 10.  The Third Circuit has repeatedly held that "[a] cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a long period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)) (citations omitted); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994).  As such, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).  A treating source's opinion concerning the nature and severity of the claimant's alleged impairments will be given controlling weight if the Commissioner finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).

Dr. McAllister opined that Plaintiff was permanently disabled due to, primarily, bipolar disorder and secondarily, due to "back pain, no right leg" (AR 267).  The ALJ concluded that Dr.

12

McAllister's opinion was not supported by his own clinical findings, the other clinical findings, and the Plaintiff's activities (AR 15). For the same reasons discussed in connection with the ALJ's evaluation of Ms. McMichael's opinion, substantial evidence supports the ALJ's rejection of Dr. McAllister's conclusion with respect to the Plaintiff's physical impairments. With respect to the Plaintiff's bipolar disorder, the ALJ acknowledged that Dr. McAllister treated the Plaintiff throughout 2009 and 2010 (AR 15). He noted that Dr. McAllister reported the Plaintiff's bipolar disorder was "acting up" in October 2009, but he was not on any medication at that time due to concerns about weight gain (AR 15). In April 2010, Dr. McAllister reported that Plaintiff's mood was fine with medication (15). By July 2010, the ALJ observed that Dr. McAllister reported Plaintiff's mood had been stable with no suicidal/homicidal thoughts or new symptoms (AR 15). Finally, the ALJ noted that Plaintiff had not sought any mental health treatment other than prescription medication from Dr. McAllister (AR 15). In sum, the ALJ concluded that the record was devoid of any medical evidence supporting Dr. McAllister's opinion that Plaintiff was precluded from working due to any mental impairment.

We further reject the Plaintiff's challenge to Dr. Kalata's assessment. Dr. Kalata was a consultative examiner, who opined that Plaintiff was essentially capable of less than sedentary work (AR 215-216). Like Dr. McAllister's assessment, the ALJ found that Dr. Kalata's opinion was unsupported by his reported findings on clinical examination (AR 15). In this regard, the ALJ noted that while Dr. Kalata's physical examination revealed that Plaintiff had an abnormal gait, lack of motor power in his right leg, and was unable to toe walk, heel walk or squat well, his motor power in his upper extremities was 5/5 (AR 14). The ALJ further noted that Plaintiff's cranial nerves were intact, his reflexes were 2/4 in the upper levels in the left leg, and he had no fractures, strains or sprains (AR 14). Finally, the ALJ observed that Dr. Kalata found Plaintiff had a full range of motion, his lungs were clear, his heart was normal and he was stable mentally (AR 14). We find that the ALJ's findings in this regard are supported by substantial evidence.

Plaintiff next argues that the ALJ failed to fully complete the record and/or recontact his examining sources in order to determine the extent of his impairments. *See* [ECF No. 9] pp. 11-12. To the extent the Plaintiff claims the ALJ failed to obtain all of his medical records, it is

13

unclear what medical evidence he contends the ALJ should have secured. The administrative record contained evidence from Warren General Hospital (AR 164-176); Saint Vincent Health Center (AR 177-197); Dr. McAllister (AR 198-208; 241-284); Dr. Kalata (AR 209-219); and Bay City Orthocare (AR 236-240). In addition, the record reflects that the ALJ subpoenaed Dr. McAllister's more recent records and the Bay City Orthocare records following the hearing (AR 27-30). Accordingly, we find no error in this regard.

We reject Plaintiff's contention that the ALJ should have recontacted either Dr. McAllister or Dr. Kalata. The Commissioner's regulations provide that an ALJ must recontact a medical source "when the report from [Plaintiff's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (quoting 20 C.F.R. § 416.912(e)(1)).[3] Recontact is only required however, when "the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." *Id*. We find no conflicts or ambiguities in the medical records that would have required the ALJ to seek further clarification. As previously discussed, the ALJ's decision to accord their opinions diminished weight was supported by substantial evidence.

## V.   CONCLUSION

For the reasons discussed above, Plaintiff's Motion will be denied and the Commissioner's Motion will be granted. An appropriate Order follows.

---

[3] The SSA eliminated this provision and § 404.1512(e)(1), effective March 26, 2012. *See generally* How We Collect and Consider Evidence of Disability, 77 Fed.Reg. 10,651 (Feb. 23, 2012). The new protocol for recontacting medical sources is set forth in 20 C.F.R. §§ 404.1520b, 416.920b. *See Gray v. Astrue*, 2012 WL 1521259 at *3 n.1 (E.D.Pa. 2012).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GEORGE A. FLASHER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-109 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 22nd day of May, 2013, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [ECF No. 8] is DENIED, and the Defendant's Motion for Summary Judgment [ECF No. 11] is GRANTED. JUDGMENT is hereby entered in favor of Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, George A. Flasher, Jr.

The clerk is directed to mark the case closed.

                                                       s/ Sean J. McLaughlin
                                                         Chief United States District Judge

cm:    All parties of record